JAMES PAUL v. CALDWELL FURNACE FOUNDRY CO.

1. NOTICE TO PRESIDENT OF CORPORATION NOTICE TO CORPORATION, WHEN.

In order to charge a corporation with notice it is not necessary that it be given in writing or orally at a meeting of its board of directors in regular session, but notice to the president, while acting within the scope of his duties, is sufficient.

2. REORGANIZED CORPORATION LIABLE ON CONTRACT OF OLD COMPANY, WHEN.

Where a contract of employment was entered into between the plaintiff and a West Virginia corporation through its president, but shortly thereafter a new corporation was organized under the laws of New Jersey for the purpose of taking over all the property and business of the West Virginia company, the new company also retaining the name

Paul v. Foundry Co.

and officers of the old company, including the president—in such case the knowledge of the president of the contract and his allowing the plaintiff to continue working under it for the new company amounts not only to notice to the latter company of its existence, but is also a ratification by it of its terms.

ERROR to Lucas common pleas court.

**Seiders & Monnette,** for plaintiff in error:

It is well settled that a corporation is not chargeable with knowledge of facts merely because those facts were known to its incorporators or stockholders or clerk. But the corporation has notice of facts which come to the knowledge of its officers or agents while engaged in the business of the corporation, provided those facts pertain to that branch of the corporate business over which the particular officer or agent has some control. *Cragie* v. *Hadley,* 99 N. Y. 131 [1 N. E. Rep. 537; 52 Am. Rep. 9]; Wood, Railway Law 457-465; *Smith* v. *Norwich (Comrs.),* 38 Conn. 208; *Anderson* v. *Kinley,* 90 Iowa 554 [58 N. W. Rep. 909]; Clark, Corporations Sec. 727, p. 1561; *Mechanics' Bank* v. *Schaumburg,* 38 Mo. 228; Thompson, Corporations Secs. 5189, 5190, 5891, 5228, 5239 and many cases cited in notes; 10 Cyc. 915; *New England Car-Spring Co.* v. *Rubber Co.* 4 Blatchf. 1 [18 Fed. Cas. 59]; *White* v. *Barlow,* 72 Ga. 887; *Indiana, I. & I. Ry.* v. *Swannell,* 157 Ill. 616 [41 N. E. Rep. 989; 30 L. R. A. 290]; *Liebfritz* v. *Railway,* 48 Iowa 709; *Connecticut Mut. L. Ins. Co.* v. *Scott,* 5 Ky. Law 639; *Conant* v. *Reed,* 1 Ohio St. 298; 12 Cent. Dig. Sec. 1754.

Scintilla rule. *Dick* v. *Railway,* 38 Ohio St. 389; *Williams* v. *Burnet,* Wri. 53; *Worden* v. *Smith,* Wri. 334; *Warring* v. *Martin,* Wri. 380; *Ellis* v. *Insurance & Tr. Co.* 4 Ohio St. 628 [64 Am. Dec. 610]; *Byrd* v. *Blessing,* 11 Ohio St. 362; *Stockstill* v. *Railway,* 24 Ohio St. 83.

Upon the question whether a contract for personal services, whereby a corporation agrees to pay in part for the same with shares of its capital stock, is invalid *ab initio.* Cook, Corporations Secs. 16, 20, 21, 22, 146, 147, 376; Green's Brice, Ultra Vires, 145; Angell & Ames, Corporations Sec. 517; *Shannon* v. *Stevenson,* 173 Pa. St. 419 [34 Atl. Rep. 218]; *Carr* v. *Le Fevre,* 27 Pa. St. 413; *Appleyard's Case,* 49 L. J. Ch. 290; *Reed* v. *Hayt,* 51 N. Y. Supr. 121; affirmed, *Reed* v. *Hayt,* 109 N. Y. 659 [17 N. E. Rep. 418]; *Kobogum* v. *Iron Co.* 76 Mich. 498 [43 N. W. Rep. 602]; *Cin. Ind. & C. Ry.* v. *Clarkson,* 7 Ind. 595; *Phillips* v. *Bridge Co.* 59 Ky. (2 Metc.) 219; *Washburn* v. *Wall Paper Co.* 81 Fed. Rep. 17 [26 C. C. A. 312; 51 U. S. App. 380];

Lucas County.

*Brant* v. *Ehlen,* 59 Md. 1; *Liebke* v. *Knapp,* 79 Mo. 22 [49 Am. Rep. 212]; *Coffin* v. *Ransdell,* 110 Ind. 417 [11 N. E. Rep. 20]; *Sprgo's Case,* 8 Ch. App. 407, 412; Clark, Corporations 379; *Verplanck* v. *Insurance Co.* 1 Edw. Ch. 46; *Iowa Lumber Co.* v. *Foster,* 49 Iowa 25 [31 Am. Rep. 140]; *Barton* v. *Plankroad Co.* 17 Barb. 397; *Cooper* v. *Frederick,* 9 Ala. 738; *Gillet* v. *Moody,* 3 N. Y. 479; *Taylor* v. *Exporting Co.* 6 Ohio 176; *Chillicothe Branch Bank* v. *Fox,* 3 Blatch. 431 [5 Fed. Cas. 632]; *City Bank* v. *Bruce,* 17 N. Y. 507; *McNeely* v. *Woodruff,* 13 N. J. Law 352; *Thompson* v. *Moxey,* 47 N. J. Eq. 538 [20 Atl. Rep. 854]; 7 Am. & Eng. Enc. Law (2 ed.) 818; 2 Thompson, Corporations Sec. 1062.

Effect of execution of contract in question by president, in absence of express authority, if subsequently ratified, acquiesced in or benefits accruing thereunder received by the corporation. Clark, Corporations 493, 494, 498, 499; *Richardson* v. *Graham,* 45 W. Va. 134 [30 S. E. Rep. 92]; *Jones* v. *Williams,* 139 Mo. 1 [39 S. W. Rep. 486; 37 L. R. A. 682; 61 Am. St. Rep. 436]; *Omaha Consol. Vin. Co.* v. *Burns,* 49 Neb. 229 [68 N. W. Rep. 492]; *Davies* v. *Steel Co.* 6 App. Div. 166 [39 N. Y. Supp. 791]; *Illinois Tr. & Sav. Bank* v. *Railway,* 117 Cal. 332 [49 Pac. Rep. 197]; *Cunningham* v. *Railway,* 63 Hun 439 [18 N. Y. Supp. 600]; *West Salem Land Co.* v. *Land Co.* 89 Va. 192 [15 S. E. Rep. 524]; *Curtis* v. *Leavitt,* 15 N. Y. 1; Dill, Priv. Companies 30; *Stokes* v. *Pottery Co.* 46 N. J. Law 237; *Fifth Ward Sav. Bank* v. *Bank,* 48 N. J. Law 513 [7 Atl. Rep. 318]; Taylor, Corporations Secs. 202, 236, 244; *Blake* v. *Manufacturing Co.* 38 Atl. Rep. 241 (N. J.); *Trenton Ins. Co.* v. *McKelway,* 12 N. J. Eq. 133; *National Tr. Co.* v. *Miller,* 33 N. J. Eq. 155; *Black* v. *Canal Co.* 24 N. J. Eq. 455; *Leggett* v. *Manufacturing & Bkg. Co.* 1 N. J. Eq. 541 [23 Am. Dec. 728]; *State* v. *Mansfield (Comrs.),* 23 N. J. Law 510 [57 Am. Dec. 409]; *Camden & A. Ry.* v. *Railway,* 48 N. J. Law 530 [7 Atl. Rep. 523]; *Ellerman* v. *Railway,* 49 N. J. Eq. 242 [23 Atl. Rep. 287]; *Hays* v. *Gas L. & Coal Co.* 29 Ohio St. 330.

As to the pleadings. *Cincinnati* v. *Cameron,* 33 Ohio St. 336; Bates, Pleading 833; *Stafford Pav. Co.* v. *Monheimer,* 41 N. Y. Supr. 184; *Mathews* v. *Leaman,* 24 Ohio St. 615; *Haigh* v. *Kaye,* L. R. 7 Ch. App. 469; *Gebhart* v. *Sorrels,* 9 Ohio St. 462; *Life Assn.* v. *Cook,* 20 Kan. 19; *Keokuk Com. Bank* v. *King,* 47 Iowa 65; *Milbank* v. *Jones,* 127 N. Y. 370 [28 N. E. Rep. 31; 24 Am. St. Rep. 454]; *Wilking* v. *Richter,* 25 Misc. 735 [55 N. Y. Supp. 582]; *Hentz* v. *Miner,* 58 Hun 428 [12 N. Y. Supp. 474]; *Milbank* v. *Jones,* 57 N. Y. Supr. 135 [5

Paul v. Foundry Co.

N. Y. Supp. 914]; Jones, Evidence Sec. 176; *Temple St. C. Ry.* v. *Hellman*, 103 Cal. 634 [37 Pac. Rep. 530].

Where an agreement is illegal in part only, the part which is good may be enforced, provided it can be separated from the part which is bad, but not otherwise. Kinkead, Code Pl. 543; *Doty* v. *Bank*, 16 Ohio St. 133; *Thomas* v. *Miles*, 3 Ohio St. 274; *Pigot's Case*, 11 Coke 276; *Pennsylvania Co.* v. *Wentz*, 37 Ohio St. 333; *United States* v. *Bradley*, 35 U. S. (10 Pet.) 343 [9 L. Ed. 448]; *United States* v. *Hodson*, 77 U. S. (10 Wall.) 395 [19 L. Ed. 937]; *United States* v. *Mora*, 97 U. S. 413 [24 L. Ed. 1013]; *Doty* v. *Bank*, 16 Ohio St. 133; *Widoe* v. *Webb*, 20 Ohio St. 431 [5 Am. Rep. 664]; *State* v. *Perrysburg (Bd. of Ed.)*, 35 Ohio St. 519; Marshall, Corporations 106; *Morris* v. *Way*, 16 Ohio 469.

**Seney, Johnson & Seney**, for defendant in error.

**HULL, J.**

This action was brought by Paul against the furnace company to recover nearly $1,000 damages which he claims he had sustained on account of a breach of contract for Paul's services. At the conclusion of the plaintiff's evidence the court below directed a verdict in favor of defendant. Judgment was entered in due course and reversal is sought here.

There were various grounds upon which the court of common pleas sustained the motion to direct a verdict; but upon the motion for a new trial the action of the court in overruling the motion was based upon one ground—that no contract had been entered into between the plaintiff and the defendant—and that is the ground relied upon in this court by defendant in error to sustain this judgment and none other need be mentioned in this opinion. The claim is made that the company with which Paul contracted went out of existence before he entered upon his duties and that the company for which he performed the duties and from which he is claiming this money, never made a contract with him, had no privity with him and are not liable to him. The contract was in writing, was executed on March 14, 1902, and is signed, "The Caldwell Furnace Foundry Company, by James W. Caldwell, President."

The testimony shows that two days before this contract was made, a corporation of this same name organized under the laws of West Virginia and elected directors. They were incorporated on March 12, but they did not organize until about two weeks later, March 29, when they elected a board of directors and officers. The original company,

the one in existence when this contract was made, was organized under the laws of West Virginia. The other company seems to have been incorporated originally under the laws of West Virginia, but on March 29 this West Virginia corporation became a New Jersey corporation and these officers and directors were elected for that corporation retaining the old name of the West Virginia corporation, the same officers and the same president.

All of the property of the West Virginia corporation was taken over by the New Jersey corporation; they went through the form, as one of the officers testifies, of a sale of the property of the West Virginia corporation to the New Jersey corporation. The West Virginia corporation went out of existence, at least so far as owning any property was concerned or having any visible existence, and the New Jersey corporation took its place. The reason for this change, apparently, was, that they preferred to do business under the laws of the state of New Jersey instead of those of West Virginia. As I have said Caldwell still remained president; the same name was retained and the same business carried on at the same place—the only change made was, that they were organized under the laws of New Jersey instead of West Virginia.

Paul had made this contract on March 14, fifteen days before this reorganization occurred. The contract was, that he was to have $1,700 a year as managing salesman of this concern, which was engaged in the manufacture and sale of heating and ventilating apparatus, but besides this $1,700 per year, to be paid monthly, he was to have certain commissions based upon the amount of sales of the company, and a certain amount of the stock of the company. He went to work under the contract April 1, the day after the reorganization of the company. He had no knowledge nor notice of this reorganization during all the time that he remained in the employ of this company. He was hired for one year.

On November 12, 1902, about six months after his contract commenced, he was discharged, without any ground except that they did not need him any more. He had been paid his salary monthly, $141.66, by this reorganized company. The commissions were not due and payable until at the end of the year. His duties were the same as specified in this contract. He went about the country here and there. A lot of correspondence is put in evidence to show what communications were made and as to the new company. Caldwell had full knowledge of this contract and signed it, and he remained president of the company until July, 1902, when he was succeeded by a man named Sutton, who called Paul into the office and told him that he desired him to remain with the

Paul v. Foundry Co.

company and perform the same services, except that he wanted him to go out on the road more than had been his habit previously; his pay continued, and he was paid under Sutton's directions up until November when he was discharged.

Caldwell testifies that he employed this man. He says there was no resolution of the board of directors to this effect but that he had full authority in the matter—he was in fact general manager as well as president of the company and appears to have had full authority to manage the company.

The claim is, that the New Jersey corporation never employed Mr. Paul; that the notice and knowledge of Mr. Caldwell of the making of this contract having accrued or been given before he became president of the new corporation, that that would not be notice to the new corporation—that they would not be bound by this contract.

We think this claim is untenable; that there was evidence here strongly tending to show that the new corporation had notice and knowledge of this contract. It is claimed by the plaintiff in error that they adopted it and ratified it and are bound by it the same as though they had signed it; and under the evidence as it is now in the record it seems to us that that is correct. The only way in which knowledge can come to a corporation, ordinarily, is through its agents and officers. In order to give notice to such a corporation it is not necessary to have a meeting of its board of directors in regular session and notify them by writing or parol; but notice to a president of a corporation, acting within the scope of his authority and in accordance with his duties, is notice to the corporation. As is said in Cook, Corporations:

"It is well settled that a corporation is not chargeable with knowledge of facts merely because those facts were known to its incorporators, or stockholders or clerk. But the corporation has notice of facts which come to the knowledge of its officers or agents while engaged in the business of the corporation, provided those facts pertain to that branch of the corporate business over which the particular officer or agent has some control."

And Thompson, Corporations:

"The most comprehensive rule with reference to this subject which can be stated is, that notice communicated to, or knowledge acquired by, the officers or agents of corporations, when acting in their official capacity or within the scope of their agency, becomes notice to, or knowledge of, the corporation, for all judicial purposes."

Now that Mr. Caldwell had notice of this contract when he was acting as president of the West Virginia corporation—of a contract

that he made and signed—is clear. That he had notice of it after he became president of his New Jersey corporation—actual notice—is clear; and according to the testimony, it was within his power to employ men or discharge them under the new corporation. He was the manager of the company and we think notice to him of the contract after he became president of the new corporation would be notice to the company. The change in the corporation was only a change in the state under which it was incorporated; there was no other reason given for it than as Mr. Caldwell says:

"Why we changed our company from West Virginia laws to New Jersey laws—a New Jersey corporation—and transferred all the property and the business and everything we had over from the one corporation to the other; quit doing business under West Virginia laws and commenced under New Jersey laws that day." In speaking of his successor, Mr. Sutton, as to what Paul did, he is asked: "Did he act for the corporation after the change was made?" And he answers: "I think he commenced his employment after the change was made; my recollection is he commenced April 1 but I am not sure about it. If he went to work before, he continued right along, but I think his actual work commenced April 1, or about that time." The new company was incorporated on March 29. And he is asked: "You knew of his being paid, did you?" And he answered: "All of our help was paid." "Who had the entire management of the New Jersey corporation after that time?" Answer: "I had the management of it, both corporations, the old and the new, under the board of directors." And he was asked: "How long did you continue to manage the affairs of the new corporation?" Answer: "Until July 3, 1902." That is when Sutton went out. Then, on the next page of the record, he is asked this: "Was there any resolution of the board of directors pertaining to that contract passed before you executed it?" A. "No, sir, it came within my authority to make sales, and all that sort of thing."

To permit the New Jersey corporation to escape liability under this contract, it seems to us, would be working a fraud upon Mr. Paul. They retained him in their employ; they recognized, adopted and ratified this contract so far as they could do so without saying that to Paul in so many words. They paid him. He did this work and nothing was said—no notice was given to him that any change was made. He had no knowledge nor notice of the reorganization, and they are to be presumed to know that—and they had no reason to suspect that he knew anything about any change in the corporation. To permit them to "take over," as they say, and go through the formalities of

Paul v. Foundry Co.

taking all of the property of every kind and description of the old corporation and assume no liability under such a contract as that, clearly cannot be sustained. We think the evidence tended strongly to show, and so far as this record shows, it did show that the New Jersey corporation acknowledged and ratified this contract.

The judgment of the court of common pleas, in our opinion, was erroneous, and will therefore be reversed.

**Haynes** and **Parker, JJ.,** concur.